CALVIN ATWOOD *vs.* SANFORD S. CHAPMAN.

Somerset.   Decided October 28, 1877.

*Deceit.   Fraudulent concealment.   Sale.   Quitclaim.*

In the sale of land, the vendor is liable for misrepresentation in regard to the title as well as the quality.

Where one by quitclaim sells land set off to him on a judgment execution, and represents that his title is good, the concealment of the fact known to him and unknown to the buyer, that a petition to reverse the judgment was then pending, is fraudulent, and renders him liable in damages.

ON EXCEPTIONS.

CASE FOR DECEIT in the sale of the defendant's interest in two pieces of real estate described in a quitclaim deed to the plaintiff, dated August 29, 1873; the first piece "containing fifty acres more or less, being the same lot conveyed to the said Chapman by sheriff's deed, June 15, 1872, and recorded," etc.; and the second "being the same conveyed to said Chapman by Llewellyn Grant [by deed dated] June 18, 1872, and recorded," etc.

At the trial, the plaintiff proved the following facts: The defendant's title came by a levy of an execution obtained in an action, *Grant* v. *Cynthia Hussey* and her husband, *John J. Hussey*, brought on account annexed, to recover the price of a certain mare, alleged by Green to have been sold by him to Cynthia and her husband for $30. Judgment was obtained in that action at the March term of this court, in 1872, by default.

That judgment before the commencement of this action was wholly reversed on review, the petition for which was entered at the September term, 1872. The defendant had full knowledge of the proceedings in review from the entry of the petition to the final judgment and appeared as counsel for Green. The sheriff's deed was of an equity of redemption from a mortgage to M. S. Parker, to secure a note of $150, which Cynthia testified she had fully paid and taken up. The conveyance from Green to Chapman was a levy by appraisement on the aforesaid execution set off to Green.

The plaintiff, after introducing the quitclaim deed, the note of

Cynthia Hussey to M. S. Parker, his own testimony and that of Cynthia Hussey, offered evidence tending to prove that Green sold the mare to John J. Hussey, the husband of Cynthia, that the consideration of the sale was $10, paid at the time of sale, and a note of Cynthia originally given to her husband for $20, on which there was still unpaid $15, making in all $25 for the mare; that she had nothing to do with the purchase of the mare, and that the defendant brought the action of *Green* v. *Hussey et al.* with a full knowledge of these facts, which testimony was excluded. The presiding justice ordered a nonsuit; and the plaintiff alleged exceptions.

*S. S. Brown,* for the plaintiff.

I. The nonsuit was improperly ordered, as on the testimony the jury might have found a verdict which would have been sustained by the court. *Fickett* v. *Swift,* 41 Maine, 65.

II. The defendant's conduct at the time of the sale, with his positive assertion that the title was good, was a material misrepresentation of the condition of the title. 2 Parsons' Con. 271 *et seq.* ; Kerr on Fraud and Mistake, 92 *et seq.*

III. The defendant has no title to first piece of land, as the mortgage was discharged before his purchase of the equity. His ignorance of this payment, under the circumstances, is no excuse. Broom's Com. Law, 341 *et seq.*

IV. Defendant's concealment of review proceeding was a fraud. " *Suppressio veri* " as actionable as " *allegatio falsi.*" 16 Maine, 30 ; 2 Parsons' Con. 274, 275.

V. The exclusion of the evidence offered was wrong, as it had a direct bearing upon the question of fraud.

*S. S. Chapman, pro se,* with whom was *D. D. Stewart.*

DANFORTH, J. This is an action to recover damages for an alleged deceit in relation to the title to certain lands conveyed by quitclaim deed from the defendant to the plaintiff. It is before us upon exceptions to the exclusion of certain testimony offered, and to the order of a nonsuit upon the testimony.

The first count in the plaintiff's writ alleges mainly a general

statement by the defendant that his title, with the exception of certain incumbrances, was good, with an averment that he had no title to one parcel, and that the title to the other piece was subsequently defeated by a suit then pending in court. Were this the only count in the writ, the action could hardly be maintained. The general statement that a title is valid involves questions of fact and law and might be fairly understood as an expression of an opinion rather than an existing fact. But what is of more consequence here, it does not appear from the testimony that this statement, in relation to one of the pieces at least, was not true. The judgment and levy upon which the title depended, though afterwards annulled, at that time so far as appears gave a good title. The judgment was then in force and the levy valid.

·The second count is more full, and though the cause of action may not be stated with entire accuracy, it is, perhaps, sufficiently so to enable us rightly to understand the "person and case" as presented by the testimony.

In this count the cause of complaint is that the defendant falsely stated his title to be good, and fraudulently concealed a material fact connected with it, which rendered·it defeasible and subsequently defeated it, whereby the plaintiff took nothing by his deed. The direct representation of the title is the same as in the first count, and standing alone, the same suggestions will apply. But taken in connection with the alleged concealment, another and a very different question is presented. It may also be true that the concealment alleged, by itself alone, might not be a cause of action. The rule of *caveat emptor* applies as well to real as to personal property. But this rule does not authorize deception in what is said or unsaid. If a person makes representations as to quality or title he is to speak the truth, or if he is placed or places himself in a position where his silence will convey a false impression, his suppression of the truth will be as much a fraud as a false statement. Hence, whether the withholding of a fact is fraudulent must depend upon the accompanying circumstances.

The testimony shows that the defendant's title to the land sold depended upon a judgment of this court, upon which an execu-

tion issued and was levied upon one parcel, while the other as an equity of redemption was sold on the same execution. Within a year from the recovery of the judgment a petition for a review of the action was commenced, and was pending in court at the time of the conveyance in question. Of this petition the defendant had knowledge, as he appeared as counsel for the respondent. The final result of this petition was the entire reversal of the judgment. To one parcel of land the defendant had a deed from the officer, to the other a deed from the judgment creditor. The fact concealed from the plaintiff was the pendency of this petition for review. Was it the duty of the defendant to make it known? We think this question must be answered in the affirmative.

The pendency of the petition was an existing fact and a material one as bearing upon the title. The sale was more than one year after the judgment. If no petition had been then commenced the title would have been safe from any attacks from that quarter. The petition pending was directly connected with the title, in fact an infirmity in it, a knowledge of which was necessary to enable the plaintiff to form an intelligent opinion of the value of that which he was about to purchase.

Sugden in his work on Vendors, 8th Am. Ed. 9, says: "If a seller knows and conceals a fact material to the title, relief cannot be refused to the purchaser." See Kerr on Fraud and Mistake, 99–102.

So where "the means of information are not equally accessible to both, but exclusively within the knowledge of one of the parties, and known to be material to a correct understanding of the subject; and especially when one of the parties relies upon the other to communicate to him the true state of facts to enable him to judge of the expediency of the bargain." *Prentiss* v. *Russ*, 16 Maine, 30, 32, 33.

The testimony shows that the defendant had this knowledge while the plaintiff had not, and such was its nature and the profession of the two men, that it may with propriety be said to have been exclusively with the defendant; and, for the same reasons, as well as from other testimony, the jury would have

been fully justified in the conclusion that the purchaser relied upon the seller to communicate all such facts.

But the testimony goes further than this. The defendant put himself in the position that by withholding the fact he must almost necessarily have conveyed a false impression. He not only stated that his title was good but he gave its origin and history, producing the papers to confirm it.

If he gives any fact he must give all the qualifications of that fact, otherwise he fails to give a true statement. When he says his title is good, and withholds an important fact which tends to impair it, he states more than the truth will authorize. When he produces a judgment from a court of competent jurisdiction with no apparent defect in it, as the foundation of his title, the plaintiff certainly had a right to understand him as asserting that, at least so far as he knew, there was no infirmity connected with that judgment, no existing fact growing out of it, which might destroy it as a muniment of title.

What explanation the defendant may be able to give of these facts we have now no occasion to inquire. We have only the testimony of the plaintiff before us, and from that we think he is entitled to have his case submitted to a jury. It is said that notwithstanding the reversal of the judgment, the plaintiff obtained a good title to that part sold as an equity. As there is no claim that the sale has been rescinded this question is not important now. If the case should go to trial other facts might and probably would be produced bearing upon this point, and if his title to that should prove good it would go in mitigation of damages.

*Exceptions sustained.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and PETERS, JJ., concurred.